COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

MIDDLESEX, ss.                                          LAND COURT
                                                        18 TL 001223 (HPS)

TOWN OF TYNGSBOROUGH,

        Plaintiff,

v.

PAULA RECCO,

        Defendant.

## AMICUS BRIEF OF THE ATTORNEY GENERAL

Pursuant to the Court's October 16, 2023 Order (the "Amicus Solicitation"), the Attorney General files this amicus brief.

## BACKGROUND

In its Complaint, the Town of Tyngsborough (the "Town") alleges that it took certain land located at 4 Danforth Road in Tyngsborough (the "Property") for non-payment of taxes. Compl. at 1. The Town recorded its tax taking on July 15, 2010 at the Middlesex Registry of Deeds. *Id.* On August 8, 2018, the Town filed this action seeking "a judgment that the title of the [Town] to [the Property] is absolute and that all rights of redemption are barred…" *Id.* After the Court vacated a 2022 default judgment, Defendant Paula Recco filed an answer asserting, among other defenses, that the judgment would result in a taking of her equity in the Property without just compensation, in violation of both the Massachusetts and United States Constitutions. Ans. at 2 (First Defense).

The Town filed a motion to amend the complaint, and its proposed amended complaint no longer seeks to foreclose on the owners' rights of redemption. Am. Compl. at 1. Instead, the

1

Town "requests that the Court enter an order requiring the Defendant to tender payment to the Town in the amount of property taxes due, interest, fees, and costs to the date of payment, as authorized by law, and for the Court to effectuate said payment by any means available to the Court and that the Court deems proper." *Id.*

In the Amicus Solicitation, the Court indicated that "the parties to the present action have questioned how, and whether, the Massachusetts tax title foreclosure procedure embodied in G.L. c. 60 ["Chapter 60"] can be implemented in a constitutional manner" considering the Supreme Court's decision in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631 (2023). It further indicates that the Town seeks an order requiring the sale of the Property and that the parties dispute whether the Court has the authority to do so. As a result, the Court has requested "input … on proposed remedies and forms of judgment …, [and] the applicability of the Commonwealth's existing eminent domain statutes, including without limitation G.L. c. 79, § 10…"

## ARGUMENT

The Attorney General appreciates the opportunity to provide input, along with amici curiae representing diverse stakeholders, on whether, and how, Massachusetts's tax taking procedure should be implemented in the wake of the Supreme Court's decision in *Tyler*. This issue is of great importance to property owners, municipalities, and the Commonwealth. While the holding of *Tyler* is relatively straightforward, implementing it within the confines of Massachusetts's existing procedures for tax takings turns out to be exceedingly challenging. After careful consideration, and as explained below, the Attorney General's position is that the Supreme Court's decision in *Tyler* has made it impossible to implement the tax taking procedure set forth in Chapter 60 in a constitutional manner. We understand the practical implication of

Exhibit B 002

that conclusion, specifically that municipalities seeking to protect an important municipal interest (*i.e.*, the collection of back taxes and penalties) may not use tax takings to do so, at least until Chapter 60 is amended, which may have an adverse impact on municipal budgets through no fault of their own. But we believe the conclusion is compelled by *Tyler*, as well as state constitutional requirements.

It is clear from *Tyler* that a municipality may take title to property in order recover the taxes and penalties it is owed, but that the value of any equity in the property that remains after the municipality has recovered those amounts belongs to the property owner and must be returned to her. *Tyler*, 598 U.S. at 637-39. Because Chapter 60 does not contain any means to return that surplus equity, a tax taking under Chapter 60 inevitably results in an uncompensated taking of property, in violation of the Constitutions of both Massachusetts and the United States.[1]

It is also the view of the Attorney General that, although it may be possible for a person whose property has been the subject of a tax taking under Chapter 60 to recover the value of the equity via a petition filed in Superior Court pursuant to G.L. c. 79, § 14, such an action, even if successful, would not remedy the constitutional defect of the Chapter 60 taking. Therefore, because a Chapter 60 tax taking is a constitutional violation (albeit one for which a state law damages remedy may be available), it is possible that officials involved in such a taking could be subject to suit in federal court under 42 U.S.C. § 1983. As the Attorney General has previously stated, "[t]he legal ramifications" in this area "are potentially significant and remain uncertain due to a number of pending cases in the federal and state courts." Office of the Attorney General, *Guidance About Tax Lien Foreclosures After the Supreme Court's Decision in Tyler v.*

---

[1] Although no Massachusetts court has yet held that Chapter 60 is inconsistent with Article 10 of the Declaration of Rights, the general rule in this area is that "the State constitutional analysis parallels the Federal." *Commonwealth v. Blair*, 60 Mass. App. Ct. 741, 745 (2004).

Exhibit B 003

*Hennepin County*, at 2 ("AG Guidance").[2]

Finally, the Attorney General urges this Court to take any available steps to expedite appellate review, including but not limited to a report under Mass. R. Civ. P. 64.

## I.      Under *Tyler*, It Is Unconstitutional for Municipalities to Retain any Surplus Value from Properties They Take to Satisfy Tax Debts.

Massachusetts municipalities may impose taxes on property and, when collecting such taxes, may impose interest and late fees.  *Tyler*, 598 U.S. at 637-38.  Collecting such amounts owed does not amount to an unconstitutional taking.  *Id.* at 638.  However, municipalities may not "confiscate more property than [is] due" when they collect the unpaid property taxes.  *Id.* at 639.  If they do, then "it effect[s] a 'classic taking in which the government directly appropriates private property for its own use.'"  *Id.* (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324 (2002)).  This holds true not only where the government sells the property and retains the surplus, but also where the government keeps the property for public uses.  *Id.* at 643 (citing *United States v. Lawton*, 110 U.S. 146, 148-50).  Accordingly, after *Tyler*, municipalities must return the surplus value of property to prevent an unconstitutional taking.  *Id.* at 639.

## II.     Chapter 60 Does Not Provide a Mechanism for Municipalities to Comply with *Tyler*.

Like the Minnesota tax statute discussed in *Tyler*, Chapter 60 provides no mechanism for municipalities or third parties[3] to return the surplus value of a property following a tax taking.[4]

---

[2] The AG Guidance is available at
https://www.mass.gov/files/documents/2023/10/18/Tax%20Lien%20Foreclosure%20Guidance_FINAL.pdf

[3] Municipalities can, and sometimes do, assign or sell the tax title to a third party.  *Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 451 (2020) (citing G.L. c. 60, §§ 2C, 52).

[4] The Amicus Solicitation does not address additional constitutional challenges to the overall scheme of Chapter 60 that were raised in Ms. Recco's answer and in the submissions of the various amici.  Accordingly, the Attorney General declines to comment on such challenges at this time.

4

Once this Court enters judgment foreclosing property owners' rights of redemption, municipalities and third parties "take[] absolute title to the property." *Tallage Lincoln, LLC v. Williams*, 485 Mass. 449, 452 (2020) (citing G.L. c. 60, § 69).  Such title is "free and clear of all encumbrances, including mortgages and other liens." *Id.* (citing G.L. c. 60, § 64).  And, as the Supreme Judicial Court previously held in construing the language of Chapter 60, municipalities "ha[ve] no power to pay out money whenever there may be a surplus …" *Kelly v. City of Boston*, 348 Mass. 385, 389 (1965).  Thus, under the current procedures set forth in Chapter 60, municipalities lack the authority to remit the surplus from a tax taking to the property owner, even if they wished to do so.  Instead, the homeowner loses all equity remaining in the property. *Id.* at 453.

The absence of a mechanism within Chapter 60 itself to return the surplus to the property owner renders it impossible to implement Chapter 60 in a constitutional manner.  Massachusetts courts have long held that "[i]t is essential to the valid exercise of the right to take private property for public use, that *the act authorizing it* should provide adequate compensation to the owner." *Drury v. Midland R. Co.*, 127 Mass. 571, 576 (1879) (emphasis added).  Thus, where a statute does not provide for just compensation for a taking, including "a ready means of ascertaining the amount," it is unconstitutional.  *Greater Worcester Cablevision, Inc. v. Carabetta Enterprises, Inc.*, 682 F. Supp. 1244, 1251 (D. Mass. 1985); *see also Dimino v. Secretary of the Com.*, 427 Mass. 704, 710-711 (1998) ("It is not sufficient for a statute to authorize a taking and then provide a *possibility* of compensation in a later proceeding.") (emphasis in original) (quoting *Opinion of the Justices*, 365 Mass. 681, 691 (1974)); *Bromfield v. Treasurer and Receiver General*, 390 Mass. 665, 668 (1983) ("The duty of paying an adequate compensation, for private property taken, is inseparable from the exercise of the right of eminent

5

domain. *The act granting the power must provide for compensation*, and a ready means of ascertaining the amount.  Payment need not precede the seizure; but the means for securing indemnity must be such that the owner will be put to no risk or unreasonable delay.") (emphasis added) (quoting *Haverhill Bridge Proprietors v. County Comm'rs of Essex*, 103 Mass. 120, 124-25 (1869)); *Connecticut River R. Co. v. Franklin County Comm'rs*, 127 Mass. 50, 52-53 (1879) ("If the government authorizes the taking of property, for any use other than a public one, or fails to make provisions for a compensation, the act is simply void; no right of taking as against the owner is conferred…").

In addition, where a statute that authorizes a taking appropriately provides for just compensation, Article 15 of the Declaration of Rights, which provides for jury trials, is implicated. *See* Mass. Const. pt. 1, art. 15.  In this context, Supreme Judicial Court precedent indicates that Article 15 very likely demands the right to a jury to determine the value of the surplus equity. *Waltham Tele-Communications v. O'Brien*, 403 Mass. 747, 753 (1989) ("Because Section 22 does not provide for the right to a jury determination of compensation [after a taking], we hold that it is unconstitutional.").

Sections 64 to 70 of Chapter 60 do not provide any mechanism for a property owner to obtain just compensation, for the parties to calculate the amount owed, or for a plaintiff to exercise her right a jury trial to determine that amount.[5]  Indeed, "the Legislature intended that the process result in forfeiture of the taxpayer's equity to the municipality." *Tallage Lincoln. LLC*, 485 Mass. at 453 n.4 (citing *Kelly v. Boston*, 348 Mass. 385, 388 (1965)).  As a result, municipalities that foreclose on property owners' rights of redemption pursuant to G.L. c. 60, §§

---

[5] Section 71 allows for a jury trial, but the issues necessarily would be those property before the Court (*i.e.*, ownership and the terms of redemption). *See* G.L. c. 60, §§ 68, 70; *Town of Lynnfield v. Owners Unknown*, 397 Mass. 470, 474-75 (1986).

Exhibit B 006

64 to 70 effect an unconstitutional taking.  *Tyler*, 598 U.S. at 638.  Sections 64 to 70 of Chapter 60[6] are therefore unconstitutional.  *Connecticut River R. Co.*, 127 Mass. at 52-53.

This Court cannot adequately remedy the constitutional deficiencies of Chapter 60. *Greater Worcester Cablevision, Inc.*, 682 F. Supp. at 1259 ("Rewriting a defective statute is not the province of the judiciary.").  While the Court correctly notes in the Amicus Solicitation that Section 68 of Chapter 60 grants it discretion to make "just and equitable" orders, that discretion "is not absolute, but is limited to determining a party's ownership interest in the property and his or her financial capability to redeem, and to setting the terms of the redemption." *Town of Lynnfield v. Owners Unknown*, 397 Mass. 470, 474-75 (1986); *see also Tallage Lincoln. LLC*, 485 Mass. at 457 (provisions of Chapter 60 should be "strictly construe[d]").  An order compelling the sale of property prior to the right of redemption being foreclosed or otherwise compelling municipalities to pay just compensation following a foreclosure is not consistent with the text or structure Chapter 60 and, therefore, is beyond the Court's discretionary authority. *Town of Lynnfield*, 397 Mass. at 474-75.  As a result, the Court cannot implement the foreclosure process set forth in Chapter 60 in a constitutional manner.

### III.   Property Owners May Seek Compensation Pursuant to Chapter 79, But Such Compensation Does Not Remedy Chapter 60's Constitutional Defect.

Although Chapter 60 does not currently provide a mechanism for obtaining surplus value, former owners whose properties were taken under Chapter 60 may be able to seek damages

---

[6] The provisions in Chapter 60 regarding the collection of taxes are separable and therefore can still be implemented. G.L. c. 4, § 6, cl. 11 (general presumption of severability for state statutes deemed unconstitutional); *Commonwealth v. Chou*, 433 Mass. 229, 238 (2001) ("where a statutory provision is unconstitutional, if it is in its nature separable from the other parts of the statute, so that they may well stand independently of it, and if there is no such connection between the valid and the invalid parts that the Legislature would not be expected to enact the valid part without the other, the statute will be held good, except in that part which is in conflict with the Constitution.").

Exhibit B 007

pursuant to G.L. c. 79, §§ 10 and 14.[7]  *See, e.g. Gilbert v. City of Cambridge*, 932 F.2d 51, 64-65 (1st Cir. 1991) (taking arising from alleged unconstitutional ordinance was indirect and, therefore, owner could seek compensation under G.L. c. 79, § 10); *Fram v. City of Boston*, 363 Mass. 68, 71-72 (1973) ("If there had been a 'taking' of the plaintiff's property other than pursuant to a formal vote of the authority, the plaintiff would still have been entitled to petition for the assessment of damages.  See G.L. c. 79, § 10.").  Since Chapter 60 does not involve a formal vote directly taking surplus proceeds, under G.L. c. 79, § 10, an owner whose property was taken by strict foreclosure may petition the municipality to voluntarily provide just compensation or, under § 14, they may file an action in Superior Court seeking damages for the taking.[8]  *See Gilbert*, 932 F.2d at 64 (Section 10 applies to inverse or indirect takings);  *FBT Everett Realty, LLC v. Massachusetts Gaming Commission*, 2017 WL 7053907, at *3-4 (Mass. Super. Nov. 7, 2017) (availability of G.L. c. 79, § 10 does not foreclose an action pursuant to G.L. c. 79, § 14).

However, even if the surplus from a strict tax foreclosure is recoverable by an action under Chapter 79,[9] that does not cure the unconstitutionality of the initial taking.  First, as explained in Part II, *supra*, Massachusetts law has long been clear that the same act authorizing a

---

[7] Section 10 of Chapter 79 says that "[w]hen the real estate of any person has been taken for the public use … but such taking, entry or damage was not effected by or in accordance with a formal vote or order of the board of officers of a body politic or corporate duly authorized by law… the damages therefor may be recovered under this chapter."  And Section 14 authorizes "[a] person entitled to an award of his damages under this chapter or the body politic or corporate bound to pay the same" to "petition for the assessment of such damages to the superior court."

[8] Because surplus proceeds would be deposited in a municipality's general fund, it does not appear that the municipality would be authorized to voluntarily return the funds to the former property owner pursuant to G.L. c. 79, § 10.  *See* G.L. c. 44, § 53 (all moneys received by municipalities are deposited into the general fund and cannot be used "without specific appropriation"); *Kelly*, 348 Mass. at 389 ("There would be no fund from which the amount could be withdrawn.").  As a result, G.L. c. 79, § 14 appears to be the only mechanism available for property owners to obtain compensation under state law.

[9] Although the Attorney General's view is that a petition under G.L. c. 79, § 14 should be available to recover the surplus in a tax taking, we recognize that no Massachusetts court has so held and that this issue is fairly described as unsettled.

Exhibit B 008

taking must also provide for compensation, and Chapter 60 does not do so. *Connecticut River R. Co.*, 127 Mass. at 52-53. Second, the Supreme Court recently clarified that even if "an adequate provision for obtaining just compensation exists," such a provision must be understood as "a remedy for a taking that violated the Constitution." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176-77 (2019). The Supreme Court emphasized that the existence of such a remedy does not "somehow prevent[] the violation from occurring in the first place," and further observed that, with respect to claims brought in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491, "a claim for compensation brought under the Tucker Act *is* a claim for a violation of the Fifth Amendment; it does not prevent a violation from occurring." *Id.* at 2177 & n.7 (emphasis in original). It follows from *Knick* that even if a Chapter 79 damages remedy is available to recover the surplus from a tax taking, that fact "does not prevent a violation from occurring." *Id.*

*Knick* also held that "the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under [42 U.S.C.] § 1983 at that time." *Id.* at 2168. This creates a possibility that, after *Tyler*, a tax lien foreclosure under Chapter 60 could create liability under Section 1983 for the involved officials. While the amount of compensation for a taking is similar under federal and state law, *see Woodworth v. Commonwealth*, 353 Mass. 229, 231-32 (1967), Section 1983 allows a plaintiff to recover attorneys' fees and costs, 42 U.S.C. § 1988(b), and may in some circumstances result in personal liability that cannot be indemnified under state law. *See* G.L. c. 258, § 9 (providing that indemnification is not available for willful acts that cause constitutional violations). Even if a cause of action may lie for recovery under Chapter 79, the availability of such an action very likely would not foreclose an action under Section 1983. *Knick*, 139 S. Ct. at 2171. As noted above, the Attorney General views "[t]he legal

Exhibit B 009

ramifications" of taking an action that would give rise to considerable exposure under Section 1983 as "potentially significant."  AG Guidance, at 2.

Finally, regardless of what procedures a property owner elects to secure just compensation for an unconstitutional taking under the federal and Massachusetts constitutions, this Court does not have jurisdiction to hear such claims.  *See* G.L. c. 185, § 1; G.L. c. 79, § 14 (specifying the Superior Court as the proper venue for a petition seeking compensation); *Kitras v. Eccher*, Civ. A. No. DUCV2012-00029, 2013 WL 5636619, at *1 n.4 (Land Ct. Oct. 15, 2013) (noting that the Court was not a "Court of Competent Jurisdiction" to hear claims arising under Chapter 79 or 42 U.S.C. § 1983).  As a result, the Court is without power to apply existing eminent domain or federal civil rights law to the tax title foreclosure process.

### IV.  Given the Significant Legal Question, the Court Should Take Steps to Ensure Prompt Appellate Review.

At issue in this case is whether the Court can continue tax lien foreclosure cases in a constitutional manner.  This issue may be outcome determinative not only in this case, but in numerous cases in the tax session.  Because of the constitutional rights implicated and potential municipal liability, the question is of utmost significance to all parties.  The Attorney General therefore urges this Court to take whatever steps it deems appropriate to ensure expedited appellate review.  One possibility of course would be to enter an appealable final judgment without delay, and possibly staying the judgment pending appeal, if necessary to protect the parties' rights.  Another would be to report the case to the Appeals Court pursuant to Mass. R. Civ. P. 64(a), which is appropriate where "the question is one of exceptional novelty, would be determinative in other pending cases, has some significance beyond the immediate case, or presents a situation when an expedited resolution at the appellate level is required." *Transamerica Ins. Group v. Turner Const. Co.*, 33 Mass. App. Ct. 446, 447 n.2 (1992).  Such is

Exhibit B 010

the case here.

## CONCLUSION

For the foregoing reasons, this Court should conclude that Chapter 60 cannot be implemented in a constitutional manner.  This Court should also take whatever steps it deems appropriate to ensure prompt appellate review of this fundamental question.

Respectfully submitted by,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Kendra Kinscherf*
David C. Kravitz, BBO #565688
Deputy State Solicitor
Kendra Kinscherf, BBO #670479
Assistant Attorney General
One Ashburton Place
Boston, MA 02108
(617) 727-2200
david.kravitz@mass.gov
kendra.kinscherf@mass.gov

Dated: January 9, 2024

## CERTIFICATE OF SERVICE

I, Kendra Kinscherf, Assistant Attorney General, hereby certify that I have this day, January 9, 2024, served the foregoing document upon all counsel of record by emailing a copy.

*/s/ Kendra Kinscherf*
Kendra Kinscherf

11