United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| STEPHEN D. WOODBRIDGE and ROBERTA BROWNING, Plaintiffs, v. THE CITY OF GREENFIELD, Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION No. 23-30093-TSH |

Memorandum of Decision and Order
May 29, 2024

**HILLMAN, S.D.J.**

Background

Stephen D. Woodbridge ("Woodbridge") and Roberta Browning ("Browning" and together with Woodbridge, "Plaintiffs") have filed suit against the City of Greenfield ("City" or "Defendant") under 42 U.S.C. § 1983 alleging that the City violated their rights under the Takings Clause of the Fifth Amendment to the Constitution ("Takings Clause") and the Excess Fines Clause of the Eighth Amendment ("Excess Fines Clause") by taking property they owned to recover unpaid taxes without compensating them for the value of the property in excess of the amount owed.

.

This Memorandum of Decision and Order addresses Defendant's Motion To Dismiss Plaintiffs' Amended Complaint Pursuant To Fed.R.Civ.P. 12(b)(6) For Failure To State A Claim Upon Which Relief Can Be Granted (Docket No. 7). For the reasons set forth below, that motion is *denied.*

## Standard of Review

On a Rule 12(b)(6) motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)(citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). The standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm.*, LLC, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernàndez v. Fortuño-Burset,* 640 F.3d 1, 13 (1st Cir. 2011).

**Facts**

Facts Relating to Woodbridge's Claims

On August 17, 2011, Woodridge was deeded the family home, located at 87 Stone Ridge Lane in the City of Greenfield, Massachusetts ("Woodbridge Property"), by his parents, Dudley and Alice Woodridge. The deed was recorded with the Franklin County Registry of Deeds ("Registry of Deeds"). The Woodbridge Property was comprised of two parcels: a 6.39-acre parcel of land which included Woodbridge's home ("Woodbridge Parcel 1"), and a separate 13-acre parcel of land ("Woodbridge Parcel 2"). On June 23, 2017, the City recorded two "Instruments of Taking" against the Woodbridge Property because Woodbridge owed and was unable to pay $5,761.85 in unpaid taxes, interest, and costs. More specifically, the First Instrument of Taking was on Woodbridge Parcel 1 as to which Woodbridge owed $4,791.74 in unpaid taxes, interest, and costs. The second Instrument of Taking was on Woodbridge Parcel 2 as to which Woodridge owed $970.11 in unpaid taxes, interest, and costs. Both Instruments of Taking were recorded with the Registry of Deeds.

On October 10, 2019, the City filed a Complaint to Foreclose on the Woodbridge Property with the Massachusetts Land Court ("Land Court"). The Complaint to Foreclose assessed the value of Woodbridge Parcel 1 at $239,600 and the value of Woodbridge Parcel 2 at $48,900. On December 20, 2019, the City secured a judgment in the Massachusetts Land Court authorizing the City's foreclosure of Woodbridge Parcel 1 and Woodbridge Parcel 2. That judgment extinguished Woodbridge's interest in the Woodbridge Property.

On October 20, 2021, the City sold Woodbridge Parcel 1 for $270,000. The City currently owns Woodbridge Parcel 2, which in 2023 was valued at $50,200, but likely has a

3

higher value. In other words, at a minimum, the fair market value of Woodbridge Property at the time of the execution of the two Instruments of Taking was over $320,000. The City calculated its costs in taking the Woodbridge Property, including past due taxes and interest, at $54,098.23. Thus, the City amount the City realized by foreclosing on the Woodbridge Property exceeded the amount it was owed by more than $270,000. The City has not paid Mr. Woodbridge any portion of that excess, which represented his equity in the family property.[1]

Facts Relating to Browning's Claims

On July 9, 2002, Sybil Moore, reserving a life estate for herself, deeded her home located at 3 Vernon Street in the City to her daughter, Browning (the "Browning Property"). The July 9, 2002, deed was recorded with the Registry of Deeds. On April 25, 2016, the City recorded an Instrument of Taking on the Browning Property based on $1,578.12 in unpaid taxes, interest, and costs that Ms. Browning owed to the City. The Instrument of Taking was recorded with the Registry of Deeds.

On January 12, 2017, the City filed a Complaint to Foreclose on the Browning Property with the Massachusetts Land Court. The Complaint to Foreclose assessed the value of the Browning Property at $109,900. On July 22, 2019, the City secured a judgment in the Land Court extinguishing Browning's interest in the Browning Property. On October 16, 2020, the City sold the Browning Property for $34,000. The fair market value of the Browning Property

---

[1] As noted, the combined amount of taxes owed on the Woodbridge Property was under $6,000. Woodbridge Parcel 2 itself was worth over $49,000 and therefore, sale of that property alone would have more than paid off the tax debt on both properties. Nonetheless, the City chose to foreclose on both properties and doing so, has realized an enormous windfall. While the statutory scheme may have permitted the City to proceed against both properties, its choice to take advantage thereof to line its coffers to this extent serves as a stark example why this statutory scheme is subject to constitutional challenge in multiple cases throughout the Commonwealth.

was far in excess of the $34,000 that the City received when it sold the property on October 16, 2020, as is evidenced by the fact that: (a) the City had assessed the property at $109,000, and (b) the purchaser sold the property nine months later, on July 21, 2021, for $272,500. The City calculated its costs in taking Browning's property including past due taxes and interest at $18,455.58. Thus, the amount the City realized by foreclosing on the Browning Property exceeded the amount it was owed by more than $15,544.52. The City has not paid Browning any portion of that excess.

The City of Greenfield's Official Policy

At all times relevant to this dispute, the City maintained an official policy of retaining the value of property taken from individuals that was in excess of the amounts that those individuals owed to the City in taxes and other costs related to the property. The City's Mayor, Roxann Wedegartner, posted a statement on the City's website as follows:

> I want to assure everyone that tax title taking or foreclosing on residents' real property by the city is a rare occasion and only used as a last resort. Nevertheless, tax payments are the lifeblood of our city and in fairness to all who pay taxes, we must seek to get real property back on the tax rolls if the owner has fallen seriously, and sometimes irreparably, behind in payments and do whatever Massachusetts General Law allows us to do to recoup the taxes. Presently, there is no legal mechanism for paying owners back for any equity the city may have retained in the past after all legal fees and expenses have been paid. (Emphasis added.)

The Mayor's policy statement reflects that the City is relying on Mass.Gen.L. ch. 60, § 64, which states: "The title conveyed by a tax collector's deed or by a taking of land for taxes shall be absolute after foreclosure of the right of redemption by decree of the land court as provided in this chapter."

The Massachusetts Statutory Scheme

Under Massachusetts law, where a taxpayer fails to pay his or her real estate taxes, a municipality may institute a tax taking, as did the City in this case. Unlike mortgage foreclosures or executions on money judgments in ordinary civil cases, the tax-foreclosing party keeps all surplus. Once the right of redemption has been foreclosed, tax title is "absolute" and neither the property owner nor any party claiming through the owner (such as mortgagees, lienors, or attaching creditors) has any claim, then or later, to the property or any part of its value. *See* Mass.Gen.L. ch. 60 §43 *et seq*.

More specifically, when a taxpayer fails to pay his or her real estate taxes, the primary method by which a municipality collects the taxes is by executing a "tax taking" pursuant to which it obtains "tax title" to the property. *See* Mass.Gen. L. ch. 60, §53.[2] In such a case, the municipality obtains "tax title" to the property. Tax title "is best understood as legal ownership of the property subject to the owner's right of redemption." *Tallage Lincoln, LLC*, 485 Mass. at 451; *see also* Mass.Gen.L. ch. 60, § 53.

> Following the taking, the municipality must create a "tax title account," to which it can "certify" (i.e., add) subsequent missed tax payments, as well as any fees, charges, and interest accrued, without having to conduct another taking. [Mass.Gen. L. ch. 60, §§ 50, 61]. Interest accrues at fourteen percent annually from the time that the taxes become delinquent until the taking, [Mass.Gen. L. ch. 59, § 57], and increases to sixteen percent annually after the taking, [Mass.Gen. L. ch. 60, § 62]. If the delinquent taxpayer does not "redeem" the property (i.e., pay

---

[2] A seconds method by which a municipality may proceed is via a tax sale pursuant to which the municipality issues a "collector's deed" to the purchaser which gives the purchaser the right to collect the taxes owed from the taxpayer and foreclose the taxpayer's right of redemption. *See Tallage Lincoln, LLC v. Williams,* 485 Mass. 449, 451 (2020)("*Tallage Lincoln LLC*"); Mass.Gen.L. ch. §53. While at one time "[t]ax sales [were] the predominant method of collecting real estate taxes …, they have fallen out of use … and have largely been replaced by tax takings." *Tallage Lincoln LLC*, 485 Mass. at 451.

6

the balance of the tax title account) within six months of the taking, the municipality can petition the Land Court to foreclose the taxpayer's right of redemption. [Mass.Gen. L. ch. 60, § 65] ... .

Once the petition to foreclose has been filed, the Land Court notifies the taxpayer and advises him or her of the right to redeem the property and the requirement to appear and answer the petition by a certain date. [Mass.Gen. L. ch. 60, § 65]. If the taxpayer fails to file a timely response to the petition, the municipality ... may immediately move the court to enter a judgment of foreclosure of the right of redemption. [Mass.Gen. L. ch. 60, § 67]. If the taxpayer answers and appears, the municipality ... files a request for a finding by the Land Court regarding the amount of money that the taxpayer must pay in order to redeem the property. [Mass.Gen. L. ch. 60, § 68]. This redemption amount includes the amount of taxes certified to the tax title account, as well as any interest, costs, and fees. *Id.* In addition, costs and fees associated with the foreclosure action, including legal fees, are chargeable to the taxpayer. [Mass.Gen. L. ch. 60, § 65]. The Land Court also sets a deadline for redemption. [Mass.Gen. L. ch. 60, § 68.]

If the taxpayer does not timely respond to the petition or fails to redeem the property according to the terms fixed by the Land Court, the court may enter judgment foreclosing the right of redemption. Upon entry of such judgment, the municipality ... takes absolute title to the property. [Mass.Gen. L. ch. 60, § 69]. [This process is] [k]nown as "strict foreclosure[.]"

...

Strict foreclosure ... does not involve any type of sale; rather, the foreclosure judgment extinguishes the taxpayer's remaining interest in the property -- the right of redemption -- and converts the municipality's ... tax title into absolute title. [Mass.Gen. L. ch. 60, § 64]. In addition, the foreclosing party takes title free and clear of all encumbrances, including mortgages and other liens. *Id.* ... Consequently, after a strict foreclosure, the taxpayer loses any equity he or she has accrued in the property, no matter how small the amount of taxes due or how large the amount of equity.

Although [Mass.Gen. L. ch. 60, § 69], states that entry of the foreclosure judgment "shall forever bar all rights of redemption," the taxpayer may move to vacate the judgment if he or she pays the redemption amount, plus interest, within one year. [Mass.Gen. L. ch. 60, § 69A]. After one year, the judgment is final and can be vacated only upon a showing of a denial of due process.

*Tallage Lincoln, LLC*, 485 Mass. at 351-352.[3]

---

[3] In *Tallage Lincoln, LLC*, the Supreme Judicial Court noted that "[s]everal of our sister States have determined that excess value from a tax taking must be made available to the taxpayer as a matter of constitutional law." The court noted that neither the parties in that case or in a previous case addressing the statutory scheme, *Kelly*

**Discussion**

To establish a claim under Section 1983, the Plaintiffs must allege that they suffered a deprivation of a right secured by the Constitution or law of the United States by a person acting under color of state law. 42 U.S.C. § 1983. Plaintiffs allege that the City violated their Fifth Amendment right which prohibits the government from taking private property for public use without just compensation. U.S. Const. amend. V. Plaintiffs also allege that the City's conduct violated the Excess Fines Clause of the Eight Amendment which prohibits the imposition of excess fines. U.S. Const. amend. VIII. More specifically, Plaintiffs allege that the City's foreclosure of their private property to satisfy tax debts which were less than the fair market value of said property at the time of the seizure, together with the City's subsequent refusal to refund the excess value to them constitutes an unlawful taking of property in violation of the Fifth Amendment, and imposition of an excess fine in violation of the Eighth Amendment. The parties have focused on whether Plaintiffs have stated a claim under the Takings Clause and the Corut will do so as well.

Reyling on the United States Supreme Court's ruling in *Tyler v. Hennepin County*, 598 U.S. 631, 143 S.Ct. 1369 (2023), Woodbridge and Browning seek to have the City return the amount money or value of property it has received/retained as the result of the taking and foreclosure of their properties in excess of amount they owed for unpaid taxes, interest and costs. More specifically, Woodbridge and Browning argue that under *Tyler*, Section 64 violates the taking and/or excessive fines clauses of the U.S. Constitution to the extent it permits

---

*v. Boston*, 348 Mass. 385, 388 (1965)(affirming that the legislature intended that the statutory process result in forfeiture of taxpayer's equity to municipality), raised a constitutional challenge to the statutory scheme.

municipalities to retain amounts received by them in foreclosure proceedings to recover unpaid taxes in excess of the amounts owed.

Greenfield seeks to dismiss the Plaintiffs' claims on the grounds that: (1) the City has not taken independent action to deprive them of their property, rather the City has simply followed the Commonwealth's statutory scheme for tax takings; (2) the so-called City "policy" cited by the Plaintiffs to support their Section 1983 claim under *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018 (1978) is simply a recitation of the City's compliance with current state law; and (3) Plaintiffs' claims are barred by principles of res judicata and claim preclusion based on the final judgment entered against them in a proceeding in the Land Court involving the same parties.

<u>Whether a Custom or Policy of the City caused a Deprivation of the Plaintiffs' Civil Rights;
Whether the Plaintiffs have Identified any Action by the City which Violated their Civil Rights</u>

<u>*Have Plaintiffs Plausibly Alleged that a City Custom or Policy Violated their Civil Rights*</u>

A municipality can be held liable under Section 1983 if the deprivation of a person's rights under the Constitution or federal law is caused by a government custom or policy of the municipality. *See Young v. City of Providence ex rel. Napolitano,* 404 F.3d 4, 26 (1st Cir. 2005)(The alleged municipal action at issue must constitute a "policy or custom" attributable to the City). To establish liability against the City, the Plaintiffs must establish a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). The City argues that the Plaintiffs have not established that it had a custom or policy which violated their rights, rather the so-called "policy" identified by the Plaintiffs was they City's conduct in acting in accordance with Chapter 60 of Massachusetts General Laws. However, a few courts have "rejected the notion that a

9

municipal defendant can claim reliance on existing state law to shield itself from § 1983 claims premised on the retention of a taxpayer's surplus equity." *See Polizzi v. County of Schoharie*, -- F.Supp.3d---, 1:23-CV-1311, 2024 WL 1061503, at *4 (N.D.N.Y. Mar. 12, 2024)(municipality voluntarily and repeatedly served as foreclosing governmental unit and chose to retain proceeds from each sale; such conduct was a policy decision with direct causal link to alleged constitutional violation) and cases cited therein. The City has not cited a case within this Circuit to the contrary. Plaintiffs have alleged that the City had a policy of exercising its discretion under the Massachusetts Statutory scheme to foreclose on the Plaintiffs' property and to retain the excess proceeds/value. The Court finds that at this stage of the proceedings, the Plaintiffs' have plausibly stated a claim that the City had a custom or policy that violated their constitutional rights.

*Have the Plaintiffs Plausibly Alleged that the City Violated Their Constitutional Rights*

Plaintiffs contend that the City violated their rights under the Takings Clause because in violation of the Supreme Court's recent ruling in *Tyler*, the City retained the surplus value of their seized properties rather than returning it to them. *See Tyler*, 598 U.S. at --, 143 S.Ct. at 1376 (while local governments may seize and sell a taxpayer's home to recover unpaid property taxes, they may not confiscate more property than was due). The City asserts that it was simply following the state statutory scheme which not only permitted it to foreclose on the Plaintiffs' properties but forbade it from paying former homeowners the surplus value of their seized property after the conclusion of foreclosure proceedings.

Generally, there is no compensable taking when there is a statutory path for property owners to recover surplus proceeds and the property owners fail to avail themselves of the

procedure. Thus, the ultimate issue in this case is whether the Massachusetts statutory scheme includes a procedure whereby a former holder of a legal interest in property may claim and receive any remaining proceeds resulting from the foreclosure and sale of such property to satisfy delinquent property taxes. *See Tyler*, 598 U.S. at --, 143 S.Ct. at 179 (State committed classic taking where its statutory scheme provided no opportunity for the taxpayer to recover excess value after foreclosure; once absolute title transferred to the State, any excess value remains with the State).

Defendant asserts *Tyler* does not implicate the Massachusetts statutory scheme as the Supreme Court, while finding unconstitutional a Minnesota statutory scheme that failed to provide any opportunity for a taxpayer to retain their equity in the property, reaffirmed a New York statutory scheme which allows taxpayers a judicial process, albeit a limited one, to recover surplus proceeds from a judicial sale. *See Tyler*, 598 U.S. at --, 143 S.Ct. at 1378-79.  More specifically, the New York stator scheme provides the taxpayer/property owner with the right to seek a sale of the property where he or she can establish that the value of the property exceeds the tax delinquency. If the sale exceeds the amount owed, the taxpayer/property owner is allowed to retain the surplus proceeds.  According to the City, the Massachusetts statutory scheme is similar to New York's in that the Land Court has the authority to order a judicial sale and reserve the surplus equity for the taxpayer rather than go the Chapter 60 foreclosure route -- a taxpayer facing foreclosure simply need request such relief from the Land Court.

The Court need not belabor the discussion on this point. The circumstances of the case cited by the City, *Town of Arlington, v. Holman, et al.*, Case No. 14 TL 148209, (Mass. Land Court Nov 30, 2016) are dissimilar from the instant case and if not all, at least substantially all,

cases brought under Mass.Gen.L. ch. 60. In the *Holmes'* case, there were questions regarding the ownership of the property prior to the municipality foreclosing thereon (due to the owner's death, provisions for life estates, and lack of probate) and whether interested parties received notice of the tax deficiencies. Indeed, the Court ordered that the property be sold to satisfy the tax lien rather than through Chapter 60's foreclosure so that the expected large surplus could go to the heirs. In doing so, the Court noted that there may be an obligation under the state constitution to order such a sale in the circumstances of that case *and* the municipality did not object. There is nothing in the opinion which suggests that this procedure was or would necessarily be available to every taxpayer.

The City cites to another case, *Tallage LLC v. Meaney*, No. 11 TL 143094, 2015 WL 4207424 (Mass. Land Ct. Jun. 26, 2015)("*Tallage*") which concerns tax debts that had been sold by a municipality to private partues who are then given the right to step into the municipality's shoes and proceed with collection actions pursuant to Chapter 60. In *Tallege*, the owner of two properties foreclosed on sought to vacate the foreclosure judgment which cut off their right of redemption. The City cites *Tallage* to support its assertion (discussed below) that taxpayers such as the Plaintiffs have the right to raise constitutional claims concerning the Massachusetts tax taking procedures with the Land Court. It is interesting to note, however, that in analyzing the issues before it, the court discussed the numerous procedures available to a taxpayer where the *municipality* invokes the Massachusetts statutory foreclosure scheme, including (1) the municipality may reduce the interest owed (interest accrues on the overdue tax payment at a rate of 14% from the time they are due and increases to 16% after the collector's sale or tax taking occurs); (2) the municipality may apply to the Commissioner of the Department of Revenue for a

reduction in principal owed: and (3) the Land Court has the discretion to make a finding allowing the taxpayer to redeem his property within a fixed time. *Id.*, at *4. Additionally, within a year after the Land Court enters the foreclosure judgment (thus cutting off the right of redemption), in order to accomplish justice, the Land Court may vacate a judgment foreclosing redemption. *Id.* The court noted that there is little authority on its powers to address the inequities of the statutory scheme. Notably, for purposes of the City's argument, the court does not mention that a taxpayer has the right to request the property be sold to satisfy the tax lien so that he or she may retain the right to any surplus proceeds.

Based on the City's own submissions, the Massachusetts statutory scheme does not provide the taxpayer the right to recover the surplus value from a municipality proceeding under Chapter 60. Moreover, in its reply brief, the City notes that in response to the Supreme Court's ruling in *Tyler*, the Massachusetts Department of Revenue has issued a Department of Revenue Bulletin ("DOR Bulletin") which notes that by operation of law, surplus funds cannot be returned to the taxpayer but must be transferred into the municipality's general funds. At the same time, the DOR Bulletin provides limited permission, in light of *Tyler*, for municipalities to hold such proceeds for future tax taking foreclosure proceedings in agency accounts pending instructions from legislature or courts[4]. The City's interpretation of this DOR Bulletin is that in light of *Tyler*, municipalities may be required to return such surplus proceeds to taxpayers *in the*

---

[4] Under the DOR Bulletin, instead of transferring the surplus sale proceeds into its general funds, may transfer them into an "agency account", that is, the municipality may effectively escrow such proceeds, until there is a determination by the courts or legislation as to how such proceeds are to be distributed.

13

*future.* It may well be the case that *Tyler* is not to be applied retroactively, but the parties have not addressed that issue and the Court declines to do so without their input. What can be gleaned from the DOR Bulletin is that the Massachusetts Department of Revenue is cognizant of the likelihood that the Massachusetts statutory scheme will be found to be unconstitutional.

The Court finds that the Massachusetts statutory scheme is closer to that of Minnesota's, which the Supreme Court struck down, than New York's (which, *as part of its statutory scheme,* provides a taxpayer the right to seek a judicial sale of the property where there is likely to be surplus proceeds). Accordingly, the Court finds that Plaintiffs have plausibly alleged that the Massachusetts statutory scheme is unconstitutional under *Tyler,* and that the City wrongfully retained the surplus proceeds/value from the taking of their properties. *Accord Mills v. Springfield,* Civ.Act. No. 2379CV00545, *slip op.* (Super.Ct. Apr. 18, 2024)(finding that Chapter 60 does not provide a procedure whereby delinquent landowner may recover the value of his or her property above amount owed when real property is taken to satisfy debts to municipality and therefore, violates taking clause of art. 10 of the Massachusetts Declaration of Rights and the Fifth Amendment to the United States Constitution).

<u>Whether the Plaintiffs' Claims are Barred by Principles of Res Judicata</u>

The City asserts that principles of *res judicata* bar Plaintiffs from bringing this action because the respective foreclosure judgments in the Land Court involved the same parties and their claims challenging the constitutionality of the Massachusetts statutory scheme could have and should have been brought in that court. *See Heacock v. Heacock*, 402 Mass. 21, 23 & n.2 1988 (the res judicata refers to the doctrine by which a judgment in one action has a binding effect in a subsequent action; claim preclusion is the doctrine by which a valid, final judgment is

deemed conclusive on the parties and their privies and bars further litigation of all matters that were or should have been raised in the first action). A lengthy discussion of the City's claim preclusion argument is not warranted. I agree with the Plaintiffs that their claims in this suit: (1) do not share a common "identity of the cause of action" which was before the Land Court, *i.e.*, the foreclosure of their properties (which are not being challenged in this Court), and (2) the claims in this action seeking the surplus proceeds from the foreclosure sales are based on facts which arose after the conclusion of the Land Court proceedings. *See Residential Funding Co. LLC v. Randle*, Civ.Act.No. 13-40076-TSH, 2013 U.S. Dist. LEXIS 167344 at *3-8 (D.Mass. Nov. 25, 2013); *States Resource Corp. v. Capizzi*, Civ.Act.No. 04-10095-DPW, 2005 U.S.Dist. LEXIS 956 at *25-26 (D.Mass. Jan. 20, 2005).

## Conclusion

Defendant's Motion To Dismiss Plaintiffs' Amended Complaint Pursuant To Fed.R.Civ.P. 12(b)(6) For Failure To State A Claim Upon Which Relief Can Be Granted (Docket No. 7) is ***denied***.

/s/ ***Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE